NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted April 10, 2020[*]
Decided April 13, 2020

*By the Court:*

No. 19-3385

| | |
|---|---|
| SHERRY WALKER, | Appeal from the United States District |
| *Plaintiff-Appellant,* | Court for the Eastern District of Wisconsin. |
| | |
| *v.* | No. 17-C-0583 |
| | |
| CHILDREN'S HOSPITAL OF | Lynn Adelman, |
| WISCONSIN, | *Judge.* |
| *Defendant-Appellee.* | |

## O R D E R

The Children's Hospital of Wisconsin mandated that Sherry Walker attend a counseling program because her baseless accusations against her coworkers eroded the trust that was essential to office collaboration. After she refused to let Children's verify her attendance in the program, it fired her. Walker sued Children's for disability and race discrimination, and the district court entered summary judgment for the hospital. Because no reasonable juror could find that the firing was unlawful, we affirm.

Children's hired Walker in September 2014 as a data analyst in its strategic planning department. The job description listed "the ability to effectively work with [others]" and to collaborate with coworkers and "users at all levels across the health system" as key to the role. Walker received positive performance reviews for her technical skills. But after about eight months on the job, she began to raise allegations

---

[*] We have agreed to decide the case without oral argument because the briefs and record adequately present the facts and legal arguments, and oral argument would not significantly aid the court. FED. R. APP. P. 34(a)(2)(C).

about coworkers. She thought that one coworker gossiped about her, did not support her work, recorded her, and gave the recording to the hospital's security team, whose members then searched Walker's purse without her consent. She also reported rumors that the department wanted to transfer her and monitored her computer usage.

Over the next year, Walker's charges against her coworkers broadened. According to Walker, colleagues tampered with work on her computer (though she had no evidence or specific examples); people considered her "disgusting;" and at times staff averted their eyes from her because they "all knew something about her." She also reported that someone in the hospital's parking lot snapped photos of her and that coworkers had tapped her home phone and planned to defame her.

Children's investigated Walker's complaints, but when it found nothing to substantiate them, it directed her to its employee assistance program. Her supervisor recommended at least twice that Walker use the program, which counsels and supports employees facing personal and professional challenges, to restore trust with her coworkers. When Walker did not schedule any sessions, Children's mandated that she participate in the program. It explained that the department needed to build "a more trusting work environment," which required that Walker "becom[e] less distrusting of [her] peers," since they had "given [her] no cause for the serious allegations … or the corresponding disruptions" to collaboration that she had made.

Walker agreed to attend the employee assistance program, which a third party, Empathia, Inc., ran, but she refused to allow Children's to verify her participation. Children's asked Walker to sign Empathia's HIPAA release form, so that Children's could receive Walker's medical information and confirm that she attended the program and followed its recommendations. When Walker refused to sign the authorization (citing privacy concerns), Children's provided her with alternate versions of Empathia's form. Each version was designed to narrow the scope of the release and to assuage Walker's unease. Children's warned Walker that her continued employment depended on her attending the assistance program and signing an authorization allowing it to verify her attendance. The final form that Children's offered would have permitted Empathia to share only the dates of Walker's sessions and confirm that she attended. Walker signed that form but crossed out a clause acknowledging that Empathia did not control the hospital's use of the information that Empathia provided. Because Walker removed that clause, the hospital believed that the authorization was not effective.

Lacking the release, Children's fired Walker. In a letter detailing its reasons for doing so, the hospital explained that she had repeatedly refused to sign the release form, despite its efforts to resolve her privacy concerns. Children's also stated that Walker's "baseless allegations divert organizational resources and attention while compromising team cohesion," and that it had attempted to rebuild trust between Walker and her coworkers by requiring her to attend the assistance program.

Walker sued Children's, alleging discrimination based on a perceived mental disability, *see* 42 U.S.C. § 12112; 29 U.S.C. § 794, and her race (black), *see* 42 U.S.C. § 2000e-2(a); 42 U.S.C. § 1981. The district court entered summary judgment for the hospital. It concluded that no reasonable juror could find that Walker was performing the essential functions of her job, or that the company fired her because of her perceived mental disability (rather than for her refusal to sign an effective release) or her race.

On appeal, Walker first argues that a reasonable juror could conclude that the hospital discriminated against her based on a perceived disability. To prevail on this claim, Walker needed to supply evidence that (1) Children's regarded her as disabled; (2) she was qualified to perform the essential functions of her job with or without a reasonable accommodation; and (3) she was fired because of the perceived disability. 42 U.S.C. §§ 12111-12, 12102(1); *see also Jaros v. Ill. Dep't of Corr.*, 684 F.3d 667, 671–72 (7th Cir. 2012) (analyzing 29 U.S.C. § 794). We review de novo the grant of summary judgment. *Stelter v. Wis. Physicians Serv. Ins. Corp.* 950 F.3d 488, 490 (7th Cir. 2020).

Walker has not furnished evidence of the second element. We will assume, as the first element requires, that the hospital regarded Walker as mentally disabled when it told her to attend the employee assistance program to regain trust in her coworkers. For the second element, Walker insists that she was qualified to perform the essential functions of her job because her positive performance evaluations confirmed her technical skills in data analysis. Even so, no reasonable juror could conclude that Walker could perform *all* the essential functions of the job. When assessing the "essential functions" of a job, the court considers whether the employer has "prepared a written description before advertising or interviewing applicants for the job" and, if so, deems the "description ... evidence of the essential functions of the job." 42 U.S.C. § 12111(8). Walker's job description listed collaboration as essential, and Walker does not dispute this requirement. But her repeated, unfounded charges against coworkers demonstrated an inability to work with them, and her refusal to allow Children's to verify her attendance in a program that could restore trust showed that this inability would persist.

Walker's response does not persuade us. She argues that, if the hospital regarded her as having a mental disorder that kept her from performing the essential function of her job, it needed to accommodate that disorder. In her view, the hospital had to waive completely the need for her to sign a HIPAA release, because the paranoia that Children's regarded her as having would prevent her from signing it. But Children's did not need to provide this accommodation. Under the Americans with Disabilities Act, 42 U.S.C. § 12201(h), employers "need not provide a reasonable accommodation … to an individual who" is *regarded* as disabled. In any case, the hospital provided the accommodation that she requested—requiring only that she allow Empathia to verify her attendance in the counseling program. Walker rejected that accommodation, but not because she wanted a further accommodation from Children's. Instead, she wanted more from Empathia—she wanted it to agree that it controlled what Children's did with the released attendance information.

Walker also fails on the third element—that Children's fired her because of her disability. She contends that the hospital's proffered reason for firing her—her failure to sign a HIPAA release and refusal to rebuild trust—is a lie. She insists that she did sign a release authorizing Empathia to turn over her attendance record. Children's does not dispute that Walker signed a purported release, but it is also uncontested that Walker struck a key clause from it. Children's believed that the strike-out invalidated the release. And Walker has supplied no evidence that this belief, even if it were inaccurate, was insincere. Therefore, she has not created a triable question of pretext. *See Graham v. Arctic Zone Iceplex, LLC,* 930 F.3d 926, 929 (7th Cir. 2019) (no pretext if employer "honestly believed" its given reason).

Finally, we agree with the district court that Walker points to no evidence that race motivated her firing. Her subjective "certainty" that race had to be a factor because she was the only racial minority on her team is not evidence of discrimination that can avoid a summary judgment. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 257 (1986).

Accordingly, we AFFIRM the judgment.